Filed 11/5/25  In re Z.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re Z.L., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D086200 |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14522C) |
| v. | |
| K.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alejandro Morales, Judge.  Affirmed.

Panda Kroll, under appointment by the Court of Appeal, for Defendant and Appellant.

David J. Smith, Acting County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Indra N. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

1

K.L. (Mother) appeals an order issued at the Welfare and Institutions Code[1] section 366.26 hearing for her child, Z.L., terminating her parental rights and selecting adoption as his permanent plan. Her sole contention on appeal is that the juvenile court erred by finding that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224.1 et seq.) did not apply to his case because the San Diego Health and Human Services Agency (Agency) did not comply with its duties of initial inquiry under ICWA. For the reasons discussed below, we conclude the court did not so err and therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2024, the Agency filed a section 300, subdivision (b)(1) dependency petition for then two-month-old Z.L., alleging that he was at substantial risk of serious physical harm because of substance abuse by Mother and Ke.L. (Father). In the attached ICWA-010(A) form, an Agency social worker stated that she had asked Mother and Father about Z.L.'s Indian status and they had given her no reason to believe Z.L. was, or may be, an Indian child. In its detention report, the Agency stated that Mother and Father had denied any Indian ancestry or that they or any family members had ever lived on a reservation or were enrolled members in a tribe. The Agency also stated that in the previous dependency case of Z.L.'s older sibling, A.L., the juvenile court found in 2023 that ICWA did not apply. Mother filed an ICWA-020 form, stating that neither she, Z.L., nor any of her ancestors were members of, or eligible for membership in, an Indian tribe.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

At the detention hearing, the court asked Mother, Father, and the maternal grandmother, whether they had any Indian ancestry, and they all denied any Indian ancestry. The Agency also stated that J.C., a maternal great-grandmother, had also denied any Indian ancestry. The court found, without prejudice, that ICWA did not apply and detained Z.L.

In its September jurisdiction and disposition report, the Agency stated that Mother, Father, and the maternal grandmother had denied any Indian ancestry or that any family member was a member of a tribe. The maternal grandmother also told the Agency that J.C., a maternal great-grandmother, had denied any Indian ancestry. The Agency reviewed its maternal relative search list with Mother, who confirmed that the maternal grandmother, the maternal grandfather, and the maternal uncle were related to her. The Agency's search for paternal relatives found that the paternal grandfather had passed away in 2022. Father did not recognize the other name on the Agency's paternal relative list and it was unable to verify that person. The Agency then mailed notification and information forms to the maternal grandmother, the maternal grandfather, and the maternal uncle and had yet to receive responses from them.

The Agency conducted a telephone interview with P.M., the other maternal great-grandmother, who stated she had not spoken with Mother for over two years. She also stated that she had not had any contact with the maternal grandfather since her return to California. She stated that she did not have any contact information for the maternal grandfather and was not interested in speaking with the Agency's social worker, but she would provide the maternal grandfather with the social worker's information if she located him.

3

Mother told the Agency that she had not spoken to her sister during the past 10 years and had spoken to her brother (i.e., the maternal uncle) twice in the past two years. She had not had any contact with the maternal grandfather in years and did not know his location.

In an October addendum report, the Agency recommended that the court make a true finding on its dependency petition, find that Mother and Father were not entitled to reunification services, and set a section 366.26 hearing for Z.L.

At the contested jurisdiction and disposition hearing in November, the court found that the Agency had made reasonable inquiry regarding Z.L.'s possible Indian ancestry and found, without prejudice, that ICWA did not apply to his case. The court then found the petition's allegations to be true, declared Z.L. to be a dependent of the court, removed him from his parents' custody, denied Mother and Father reunification services, and set a section 366.26 hearing.

In its March 2025 section 366.26 report, the Agency restated that Mother, Father, the maternal grandmother, and J.C., a maternal great-grandmother, had all denied any Indian ancestry. The Agency stated that it had "no new information regarding ICWA nor had any contact with any additional relatives during this reporting period." The Agency recommended that the court find, without prejudice, that ICWA does not apply to Z.L.'s case, terminate the parental rights of Mother and Father, and select adoption as Z.L.'s permanent plan.

On April 21, 2025, the court conducted a contested section 366.26 hearing and received in evidence, and considered, the Agency's reports. The court found, without prejudice, that ICWA did not apply to Z.L.'s case, stating "there's no information to the contrary." The court then terminated the

parental rights of Mother and Father and selected adoption as Z.L.'s permanent plan.  Mother timely filed an appeal, challenging the April 21, 2025, order.

DISCUSSION

*Substantial Evidence Supports Court's Finding ICWA Did Not Apply*

Mother contends that substantial evidence does not support the juvenile court's finding that ICWA does not apply to Z.L.'s case because the Agency did not comply with its duty of initial inquiry regarding his possible Indian ancestry.  In particular, she argues that the Agency should have inquired of the maternal grandfather, the maternal uncle, and P.M., a maternal great-grandmother, about any possible Indian ancestry.

A

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).)  ICWA provides:  "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and their right to intervene."  (25 U.S.C. § 1912(a); see also, *Isaiah W.*, at p. 8.)  California law also requires such notice.  (§ 224.3, subd. (a).)  Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subds. (a), (b).)

Sections 224.2 and 224.3 set forth California's ICWA inquiry and notice requirements for juvenile dependency cases.  Under sections 224.2 and 224.3,

5

the Agency and the juvenile court are generally obligated to: (1) conduct an initial inquiry regarding whether there is a reason to believe the child is, or may be, an Indian child; (2) if there is, then further inquire whether there is a reason to know the child is an Indian child; and (3) if there is, then provide ICWA notice to allow the Indian tribe to make a determination regarding the child's tribal membership. (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048–1052 (*D.S.*); *In re Austin J.* (2020) 47 Cal.App.5th 870, 882–885.)

Section 224.2, subdivision (a) imposes on the juvenile court and the Agency "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child[.]" Section 224.2, subdivision (b) establishes the Agency's duty of initial inquiry, providing:

> "If a child is placed into the temporary custody of [the Agency] . . . , [the Agency] . . . has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

An "extended family member" under that statute includes a person "who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, §§ 224.1, subd. (c), 224.2, subd. (b).)

When a juvenile court finds that ICWA does not apply to a case, it implicitly finds that neither the Agency nor the court knew, or had reason to know, that the child was an Indian child, and that the Agency fulfilled its duty of inquiry. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) On appeal, we review for substantial evidence a juvenile court's finding that ICWA does

6

not apply. (§ 224.2, subd. (i)(2); *In re A.M.* (2020) 47 Cal.App.5th 303, 314.) Our Supreme Court stated that a juvenile court's "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141 (*Dezi C.*).) Regarding the applicable standard of review, the court held: "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Ibid.*)

B

Mother contends that the Agency's initial section 224.2 inquiry was deficient because it failed to ask the maternal grandfather and the maternal uncle about the possibility of Z.L.'s Indian ancestry. As Mother correctly notes, the Agency's duty to make that initial inquiry applied to, among other persons, "extended family members," which includes Z.L.'s maternal grandparents and uncles (e.g., the maternal grandfather and the maternal uncle). (§§ 224.1, subd. (c), 224.2, subd. (b); 25 U.S.C. § 1903(2).) Mother also argues that the Agency's duty of initial inquiry also applied to P.M., a maternal great-grandmother, because, although she was not an extended family member, she was an "other[ ] [person] who ha[s] an interest in [Z.L.]." (§§ 224.1, subd. (c), 224.2, subd. (b); 25 U.S.C. § 1903(2); cf. *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 787 [agency failed to interview great-grandmother].) Although the record is unclear whether P.M. is a person who has an interest in Z.L., we shall assume she is such a person for purposes of addressing Mother's argument.

7

Based on our review of the record, we conclude, contrary to Mother's argument, that there is substantial evidence to support findings by the court that the Agency fulfilled its duty of initial inquiry and that ICWA did not apply to Z.L.'s case. First, the record shows that the Agency inquired of Mother, Father, and the maternal grandmother about any possible Indian ancestry, and they all denied Indian ancestry. Also, the maternal grandmother informed the Agency that J.C., a maternal great-grandmother, had denied any Indian ancestry.

Second, there is substantial evidence in the record to support a finding by the court that the Agency fulfilled its duty to contact the maternal grandfather and maternal uncle and inquire regarding Z.L.'s possible Indian ancestry. As discussed above, the Agency mailed notification and information forms relating to Z.L.'s case to the maternal grandfather and the maternal uncle, but it did not receive a response from either one. The court could reasonably find that, given their failure to respond to the Agency's mailings, the Agency had no further duty to make additional attempts to contact them to inquire about any Indian ancestry. In particular, the court could find that the Agency, by mailing the notification and information forms to the maternal grandfather and maternal uncle (presumably, to the only addresses or other contact information it had for them), made "a meaningful effort to locate and interview" the maternal grandfather and maternal uncle. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*).) "The Agency is not required to 'cast about' for information or pursue unproductive investigative leads." (*D.S., supra*, 46 Cal.App.5th at p. 1053.) The duty of initial inquiry " 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the

8

agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C., supra*, 16 Cal.5th at p. 1140.) Therefore, the court here could reasonably find that the maternal grandfather and maternal uncle, by not responding to the Agency's mailings, were not reasonably available to help the Agency investigate whether Z.L. was possibly an Indian child. (*Ibid*.)

Third, there is also substantial evidence in the record to support a finding by the court that the Agency fulfilled its duty to contact P.M., a maternal great-grandmother, to inquire whether Z.L. was possibly an Indian child. As discussed above, the Agency social worker conducted a telephone interview with P.M. P.M. stated that she had not spoken with Mother for over two years, had not had any contact with the maternal grandfather since her return to California, and was *not* interested in speaking with the Agency's social worker. The court could reasonably find that the Agency, by conducting a telephone interview with P.M., made "a meaningful effort to locate and interview" her. (*K.R., supra*, 20 Cal.App.5th at p. 709.) Furthermore, the court could also reasonably find that P.M., by expressly stating she was not interested in speaking with the Agency's social worker, was not reasonably available to help the Agency investigate the possibility of Z.L.'s Indian ancestry. (*Dezi C., supra*, 16 Cal.5th at p. 1140.)

Accordingly, we conclude that there is substantial evidence to support a finding by the court that the Agency made a meaningful effort to locate and interview those persons who were reasonably available to help it investigate whether Z.L. had any possible Indian ancestry. (*Dezi C., supra*, 16 Cal.5th at p. 1140; *K.R., supra*, 20 Cal.App.5th at p. 709.) Because there is substantial evidence to support the court's findings that the Agency's initial inquiry was adequate and proper and that ICWA does not apply to Z.L.'s case, the court

did not err at the section 366.26 hearing by finding that ICWA did not apply to Z.L.'s case.  (*Dezi C.,* at p. 1141.)

DISPOSITION

The April 21, 2025, order is affirmed.

BUCHANAN, J.

WE CONCUR:

DATO, Acting P. J.

HUFFMAN, J.*

---

*        Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.